UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROBERT L. HOLLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00167-JRS-MG |
| | ) | |
| MAKENZY GILBERT, | ) | |
| KYRA HESS, | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff, Robert Holleman, is a federal prisoner formerly in State custody who, at all times relevant to his Second Amended Complaint was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). Dkt. 42. He filed this civil rights action alleging that Defendants violated his constitutional rights when they confiscated a copy of the Indiana Rules of Court that was sent to him from a residential address without a receipt enclosed. Defendants have moved for summary judgment. For the reasons explained below, the claims for declaratory and injunctive relief are **dismissed as moot**, and Defendants are entitled to judgment as a matter of law on the remaining claims.

### I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas*

*v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inadmissible evidence, including hearsay, cannot create a genuine issue of fact. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and need not "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).

## II. Undisputed Facts

Mr. Holleman directed a friend to purchase a copy of "West Indiana Rules of the Court," (hereinafter, "Indiana Rules of the Court" or the "book") from Judy's Books, a seller on E-Bay. Dkt. 42 at ¶6. The book, sent by "Judy L. Harper, 500 N. Shelby St., Salem, IN  47167," arrived at Wabash Valley on or about April 13, 2018. Dkt. 72-8 at ¶6. It was confiscated because it did not have a receipt and was not from an authorized seller. Dkt. 72-7. This lawsuit followed.

### A. Defendants

The defendants in this case are Richard Brown, Kyra Hess, and Makenzy Gilbert.

Richard Brown was the Warden at Wabash Valley from February of 2011 through March 21, 2020. Dkt. 72-1 at ¶¶2-3. He is now the Executive Director of Adult Facilities for the Indiana Department of Correction ("IDOC"). *Id.* at ¶1.

Makenzy Gilbert and Kyra Hess were employed by IDOC and worked in the Mail Room at Wabash Valley. Ms. Gilbert was a Supervisor and Ms. Hess was a Clerk. Dkt. 72-8 at ¶¶2, 4. Ms. Gilbert and Ms. Hess's duties included reviewing incoming prisoner correspondence to ensure that the correspondence did not violate IDOC policies prior to delivery to the prisoner. *Id.* at ¶¶2, 5.

**B. Correspondence Policy**

Warden Brown testified that from March 1, 2018, through March 15, 2021, the operative Correspondence Policy at Wabash Valley was Operational Procedures 02-01-103 ("Correspondence Policy"). Dkt. 72-1 at ¶4; Dkt. 72-2 (Correspondence Policy).[1] The Correspondence Policy governed an offender's sending and receipt of mail, electronic or otherwise. *Id.* at ¶7.[2]

With regard to printed matter, which includes books, the Correspondence Policy states:

> An offender may acquire or possess printed matter on any subject; however, printed matter shall be inspected and may be excluded if the matter is contraband or

---

[1] Mr. Holleman attempts to call this fact into question. He states that OP 02-01-103 was not in effect at Wabash Valley in 2018 because the copy of the policy submitted by Defendants does not include the Warden's signature or the approval date. *See* dkt. 72-2 at p. 28. He offers no citation to admissible evidence to support his argument that "both need[] to be on that policy for it to be in effect." Dkt. 77 at p. 3. This argument is insufficient to call the Warden's testimony into question. Even if a technical error exists, there is no evidence that the Defendants did not rely on this policy during the events at issue in this case. Mr. Holleman further asserts that there was a policy dated November 15, 2019, but that policy could not be identified in the record. Dkt. 77 at p. 10. In surreply, Mr. Holleman references an April 1, 2018, Correspondence Policy, but did not provide a copy of that Policy. Dkt. 83-1 at p. 10. Further, there is no evidence that any amendments to OP 02-01-103 are material to the claims in this case.

[2] Mr. Holleman concludes that OP 02-01-103 is unconstitutional. Dkt. 77 at p. 9. He argues that his conclusion should be considered a fact because he stated this conclusion in his Complaint and signed that Complaint under penalty of perjury. It is true that a complaint signed under penalty of perjury can be considered as an affidavit at summary judgment, "[b]ut affidavits are for stating facts, not legal conclusions*." Greene v. Westfield Ins. Co*., 963 F.3d 619, 627 (7th Cir. 2020). Accordingly, Mr. Hollman's legal conclusion that the policy is unconstitutional is disregarded. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) (noting that "legal argument in an affidavit may be disregarded").

prohibited property. An offender must receive printed matter mailed directly from the publisher, the distributor or an accredited institution of higher learning, unless the offender or the sender receives prior approval from the Warden to receive the printed matter from another source. **All printed matter must be accompanied by a receipt of invoice for the purpose of verification.**

Dkt. 72-2 at p. 21 (emphasis added).

The Correspondence Policy defines "legal correspondence" as "correspondence mailed directly from or to a court, a judge or an attorney . . . which has been identified as legal mail." Dkt. 72-2 at p 1.

Mr. Holleman did not have actual notice of OP 02-01-103 before the book was ordered for him. Dkt. 77-1 at ¶5. Mr. Holleman submitted numerous requests to Warden Brown to receive various books at the prison but every request that was answered was denied. Dkt. 77-1 at p. 23.

**C. Confiscation of the Book**

Mr. Holleman directed a friend to purchase a copy of Indiana Rules of the Court from Judy's Books, a seller on E-Bay. Dkt. 42 at ¶6. The book was sent to Wabash Valley by "Judy L. Harper" with a return address of "500 N. Shelby St., Salem, IN 47167" and did not contain a receipt. Dkt. 72-8 at ¶6. On April 13, 2018, Ms. Hess issued a confiscation slip notifying Mr. Holleman that she had confiscated "Indiana Rules of Court" book because there was "no receipt" and cited to ED [Executive Directive] 17-66. Dkt. 72-7 at 1.

Mr. Holleman filed an informal grievance on April 16, 2018, in which he challenged the confiscation of the book and wrote: "On 4/13/18, I had a legal book (Indiana Rules of the Court) confiscated by the mailroom because of no receipt. My legal book doesn't need a receipt. Please give me my book." Dkt. 72-7 at p. 2. In response, Ms. Gilbert stated: "There was no sender and no receipt. There is NOTHING in policy saying legal books don't need a receipt." *Id.*

On April 23, 2018, Mr. Holleman submitted a formal grievance stating that he wanted the book, that ED 17-66 does not apply, and that "legal books and publications can come from any source and do not need a receipt with them." Dkt. 72-7 at p. 6. In response to the formal grievance, Ms. Gilbert responded as follows:

> When confiscating offender Holleman's book, Ms. Hess made an error in quoting the grounds for the confiscation. Ms. Hess wrote "ED-17-66" when policy OP 02-01-103 should have been quoted. Per policy OP 02- 01-103 Sec XVII, all printed matter must come directly from the publisher, the distributor, or an accredited institution of higher learning, unless the offender or the sender received prior approval from the Warden. All printed matter must be accompanied by a receipt or an invoice. Mr. Holleman is claiming that this portion of the policy does not apply because his book is a legal publication. According to policy OP 02- 01-103, legal mail is defined as material coming from an attorney, court, judge, or ACLU. The sender is none of those.

Dkt. 72-7 at p.4. Additionally, the Grievance Specialist affirmed the denial, noting that "[a]fter review of the confiscated material and policy OP 02-01-103, it is found that the book[] did not come from an authorized source. Publications that are not from an authorized source must have prior approval from the Warden." *Id.* Neither Mr. Holleman nor the sender, Judy Harper, sought the Warden's prior approval for Mr. Holleman to receive the book. Dkt. 72-1 at ¶11.[3]

Mr. Holleman appealed the denial of his Offender Grievance on June 12, 2018, stating:

> The formal response claims that Ms. Hess made an error in citing the grounds for the confiscation when she cited ED 17-66, when policy OP-02-01-103 should have been cited.
> However, this mistake by Ms. Hess was in fact <u>a lie</u>, and when I pointed out that Ms. Hess <u>lied</u> in using ED 17-66 as grounds to confiscate my book, the mailroom then came up with a new reason, but you don't get to do that.

---

[3] Mr. Holleman states that he previously received four books from Judy's Books at Wabash Valley. Dkt. 77-1 at ¶ 16. In addition, Charles Davis, a person incarcerated at Wabash Valley, testified that his daughter ordered the Indiana Rules of the Court book from Judy's Books and that the book was delivered to him at Wabash Valley. Dkt. 77-1 at ¶¶ 4-5. These facts are not sufficient to create a material fact in dispute because there is no evidence that the book sent to Mr. Holleman in April 2018, indicated that it was from Judy's Books and not from an individual at a residential address. In addition, there is no evidence that the books that were successfully purchased and received by Mr. Holleman and Mr. Davis did not include a receipt as required by the Correspondence Policy.

> Further, originally M. Gilbert claimed that there was no sender, no receipt, in answering my informal grievance which as <u>also a lie</u> the confiscated form had the name of the sender and M. Gilbert claimed the reason for the confiscation was because there is nothing in policy saying legal books don't need a receipt.
>
> Now M. Gilbert quotes policy OP 02-01-103, Section XVII, as the grounds for the confiscation of my legal law book. But, this policy does not apply to legal books.
>
> This was not legal mail. It is a legal book so I guess I will file a lawsuit in Federal Court over my legal book and obtain a court order forcing M. Gilbert to give me my book. I have a First Amendment right to that book and this facility should know that.
>
> In addition, inform the mailroom to <u>keep my law book</u>, once the grievance process is over, I will immediately file my suit to get my book/damages. <u>Do not destroy my property!</u>
>
> Further OP 02-01-103, Sec. XVII, doesn't say what is claimed!

Dkt. 72-7 at pp. 9-10 (emphasis in original).

In response to Mr. Holleman's Grievance Appeal, Warden Brown's designee denied the appeal and explained: "Your book does not qualify as legal correspondence and the mailing did not follow department policy for printed materials." *Id.*

Mr. Holleman then submitted a Formal Appeal, which was denied because he did not have "prior approval from the Warden" and the book "does not qualify as legal correspondence." Dkt. 72-7 at pp. 12, 14, 15.

### D. Mr. Holleman's Access to the Indiana Rules of the Court.

Wabash Valley's law library is required to maintain, and did maintain, certain legal books. Dkt. 72-3 at ¶4-5; Dkt. 73-4. Consistent with IDOC Policy 00-01-102, Wabash Valley's law library, maintained a copy of "West's Indiana Rules of the Court or other equivalent." *Id.* Additionally, offenders have access to LexisNexis where "Indiana Rules Annotated" is accessible. *Id.*

Mr. Holleman regularly visited the law library and accessed a computer while there between April 26, 2018 and October 22, 2020. Dkt. 72-5. Mr. Holleman testified that regardless of what resources the library maintained, he was never able to borrow or review a copy of Indiana Rules of Court. Dkt. 77-1 at ¶18. In addition, he could not count on the LEXIS Nexis system. *Id.* at ¶20.

**E. Security Interest in Regulating Printed Materials Entering the Prison**

The primary security interest in regulating the receipt of prisoner's correspondence is the threat of receipt of contraband. Dkt. 72-1 at ¶16.[4] A primary way contraband, which includes weapons, drugs, cell phones, and obscene photographs, comes into Wabash Valley is through correspondence. *Id.* at ¶17-18. While x-ray machines may detect certain contraband, like metal weapons, other contraband, like drugs or obscene imagery, will not be detected through an X-ray. *Id.* at ¶19.

Printed material coming into prisons, including Wabash Valley, presents a unique challenge in detecting drugs. *Id.* at ¶ 20. Senders have become adept in concealing drugs by printing the drugs onto printed material. *Id.* at ¶21. Thus, prisons have a heightened security interest in regulating the manner in which printed material can be sent to offenders. *Id.* at ¶22. By requiring printed material to be sent through approved sources or with the prior written approval of the Warden, prisons, including Wabash Valley, can generally trust that the printed material does not have drugs printed onto it. *Id.* at ¶23.

---

[4] Mr. Holleman tries to dispute this fact by arguing that legal books are not permitted from non-approved sources without receipts because of an uptick in lawsuits filed by prisoners and that his book was confiscated because of his prior litigation. Dkt. 77-1 at ¶ 35-36. This testimony is based on a conversation Mr. Holleman had with Ms. Blasingame, a non-party. This conversation is inadmissible hearsay. *See* fn. 7, *infra*.

Were legal books exempted from the Correspondence Policy, prisoners could misuse this loophole by having such contraband sent to them in legal books. Dkt. 72-1 at ¶24-25.

In addition, concealed drugs pose a substantial risk to prison officials inspecting incoming mail. Prison officials have been exposed to chemicals or drugs during inspection of correspondence and required medical treatment. Dkt. 72-1 at ¶26.

### III. Discussion

Mr. Holleman alleges that the confiscation of the book violated his constitutional rights. He raises the following claims in his Second Amended Complaint: 1) the Correspondence Policy is unconstitutional; 2) confiscation of the book violated the First Amendment; 2) confiscation of the book violated his right to access the courts; 3) confiscation of the book violated his due process rights; and 4) confiscation of the book was done in retaliation for his prior legal activities. Dkt. 42 at p. 11-12 (Second Amended Complaint).[5] Mr. Holleman seeks money damages and a declaratory judgment finding that Wabash Valley's Correspondence Policy is unconstitutional. Defendants deny that they violated Mr. Holleman's constitutional rights and argue that they are entitled to qualified immunity. For the reasons explained below, Mr. Holleman lacks standing to challenge the constitutionality of the Correspondence Policy, and defendants are entitled to qualified immunity on all claims seeking money damages.

---

[5] Defendants assert that the Second Amended Complaint could also be interpreted to bring a state tort claim against the Defendants in their individual capacities for "outrageous conduct," but that any such claim is barred by the Indiana Tort Claims Act. Dkt. 71 at p. 33. This Court does not understand the Second Amended Complaint to assert a state law claim and Mr. Holleman does not suggest that he intended to raise such a claim in his response memorandum. But if such a claim was intended, the Court agrees with the Defendants that it is barred by Indiana Code § 34-13-3-5(b). "Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). *See also Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016) ("Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment.").

**A. Lack of Jurisdiction to Consider Constitutionality of the Correspondence Policy**

Mr. Holleman seeks a declaratory judgment that the Correspondence Policy is unconstitutional because it is unreasonable, arbitrary, and vague. Dkt. 77 at p. 9. Defendants seek summary judgment, arguing that even if Mr. Holleman has standing to challenge the Correspondence Policy, his claims must fail because the policy does not violate the First Amendment. Dkt. 71 at p. 12.

"'[F]ederal courts are obliged to police the constitutional . . . limitations on their jurisdiction.'" *Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 278 (7th Cir. 2020) (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)). Article III of the Constitution requires the existence of an actual case or controversy, not only upon initiation of the action, but at every phase of the proceedings. *Jones v. Sullivan*, 938 F.2d 801, 805 (7th Cir. 1991). In addition, "mootness has two aspects: 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Mootness has been defined as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *U.S. Parole Comm'n,* 445 U.S. at 397 (citing Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).

In this case, Mr. Holleman's challenges to the constitutionality of the Correspondence Policy and any claim for declaratory or injunctive relief are moot. This conclusion is based on the fact that Mr. Holleman has been released from IDOC custody to parole and is now in the custody of the Bureau of Prisons. As such, he no longer has a legally cognizable interest in his challenge to the constitutionality of the Correspondence Policy and the defendants, in their official capacities,

are no longer in a position to provide him with any injunctive relief. Accordingly, the challenge to the legality of the Correspondence Policy is **moot and dismissed for lack of jurisdiction**.

### B. Qualified Immunity

Given the dismissal of all claims for equitable relief for lack of jurisdiction, what remains for consideration are Mr. Holleman's claims for money damages against the defendants in their individual capacities. Defendants contend that they are entitled to judgment as a matter of law based on qualified immunity.

Qualified immunity protects government officials from liability for money damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted). This inquiry "'must be

undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)).

### 1. Waiver

Qualified immunity is an affirmative defense that can be waived. *See Henry v. Hulett*, 969 F.3d 769, 785-86 (7th Cir. 2020). Mr. Holleman argues in his surreply that the defendants waived their qualified immunity defense because they failed to file an Answer to his Second Amended Complaint.[6] Dkt. 83-1 at pp 9-10. However, the Second Amended Complaint simply corrected three typographical errors in paragraphs 7, 11, and 19, where the defendants' names were swapped. Dkt. 34. The Second Amended Complaint did not change or add allegations or claims. Accordingly, the Second Amended Complaint is really just a corrected version of the Amended Complaint, and the Answer to the Amended Complaint is sufficient. Dkt. 26. That Answer asserts the following affirmative defense: "Defendants are entitled to a qualified immunity from damages under 42 U.S.C. § 1983 with respect to any claim for damages by Plaintiff based upon federal constitutional principles or federal law because their actions were objectively reasonable and did not violate clearly established principles of law." Dkt. 26 at p. 2.

In addition, Defendants timely raised this defense in their motion for summary judgment and Mr. Holleman responded on the merits in his reply. The Seventh Circuit has noted that waiver is enforced "in part to prevent prejudice to the opposing party." *White v. Stanley*, 745 F.3d 237, 239 (7th Cir. 2014). In this case, considering the defense will not prejudice Mr. Holleman. He was

---

[6] Mr. Holleman's motion to file a surreply, dkt [83], is **granted.** The arguments raised in the surreply were considered in ruling on the motion for summary judgment.

on notice from the time the Answer was filed that Defendants planned to assert qualified immunity. And when it was raised in the defendants' summary judgment memorandum, Mr. Holleman responded in his memorandum in opposition. Waiver is therefore inappropriate. Accordingly, Mr. Holleman's waiver objection is overruled, and the Court will consider Defendants' qualified immunity defense as it applies to each of Mr. Holleman's claims for relief.

### 2. Access-to-the-Courts and Due Process

The defendants argue that their actions in enforcing the Correspondence Policy did not violate clearly established statutory or constitutional rights of which a reasonable officer would have known. A single book was confiscated because it arrived at the facility without a receipt from an authorized source. A reasonable officer would not have understood that confiscating this book would violate Mr. Holleman's constitutional rights.

Defendants argue that neither the Supreme Court nor any Circuit Court has held that "legal books" mailed to a prisoner are entitled to protection under the First Amendment and therefore exempt from the prisoner's requirements for sending of "printed material" or "books" applicable to all other content. *See e.g., Cooper v. Vincent*, No. 5:17-CV-10- TBR, 2019 WL 5580242, at *6 (W.D. Ky. Oct. 29, 2019) (prison officials entitled to qualified immunity on the prisoner's First Amendment claims regarding the mail room's rejection of four legal books because the prison's policy of rejecting legal books sent by third parties (which was the policy for all books sent to the facility), was constitutional); *Whitehead v. Mgmt. & Training Corp.*, No. CV 17-275 MV/KK, 2021 WL 1248387, at *13 (D.N.M. Mar. 1, 2021) (finding that prison's restriction that inmates may only receive publications from approved vendors did not violate the First Amendment); *Downes v. Davenport*, No. 2:15-CV-437-ECM, 2020 WL 6541985, at *1 (M.D. Ala. Nov. 6, 2020)

(holding that a prison's restriction on an inmates' ability to receive hardback legal books did not violate the First Amendment).

In response, Mr. Holleman argues that the defendants are not entitled to qualified immunity on his First Amendment retaliation claim, but he does not challenge the defense as it applies to claims that the confiscation of the book pursuant to the Correspondence Policy violated his First Amendment right to receive legal books, his right to access the courts, and due process.

Mr. Holleman carries the burden of overcoming this affirmative defense. *Sparing,* 266 F.3d at 688. In the absence of any case law that suggests that the confiscation of the book violated a clearly established right under the First Amendment or Due Process Clause, the Court concludes that Ms. Hess did not violate a clearly established constitutional right when she confiscated the Indiana Rules of Court book because it was not sent by an authorized seller with a receipt in accordance with the Correspondence Policy. Warden Brown did not violate a clearly established constitutional right by his role in creating or implementing the Correspondence Policy. Finally, Ms. Gilbert did not violate Mr. Holleman's clearly established constitutional rights when she confirmed that the confiscation of the book was appropriate during the course of the grievance process.

Defendants are entitled to qualified immunity on these claims because their actions were not clearly unconstitutional under the circumstances.

### 3. Retaliation

Mr. Holleman alleges that the confiscation of the book was done in retaliation for his prior legal activities and that otherwise permissible conduct can become impermissible when done for retaliatory reasons. *See Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987). Defendants seek

summary judgment arguing that Mr. Holleman lacks sufficient evidence to support his retaliation claim.

To establish a prima face case of retaliation at summary judgment, Mr. Holleman must have evidence to support three elements. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "Suspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists. *Id.*

If the plaintiff is able to establish the elements of a retaliation claim, "'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Hawkins v. Mitchell,* 756 F.3d 983, 996 n.10 (7th Cir. 2014) (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (cleaned up)). "And if the defendant does this, 'the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus.'" *Id.* (quoting *Thayer*, 705 F.3d at 252). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer the proffered reason is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011).

For purposes of this summary judgment motion, Defendants do not dispute that Mr. Holleman engaged in a protected activity and that the confiscation of the book is a deprivation likely to deter future First Amendment activity. Dkt. 71 at p. 25. They argue, however, that Mr. Holleman does not have any evidence to support his claim that his past "protected activity was 'at least a motivating factor' for the retaliatory action." *Thomas v. Anderson*, 912 F.3d 971, 976

(7th Cir. 2018). They further argue that even assuming Mr. Holleman could establish a prima facie case for retaliation, his claim must still fail because the undisputed evidence shows the book was confiscated for non-retaliatory reasons – it was received by the facility in violation of its Correspondence Policy.

To establish that retaliatory animus was a motivating factor in the defendants' retaliatory action, the plaintiff must show, at a minimum, that the defendants were aware of the plaintiff's protected activity. *See, e.g., Daugherty*, 906 F.3d at 610 (affirming grant of summary judgment when inmate presented only "vague and confusing testimony that [the inmate], at some point, named [the defendant] in a grievance" but "no evidence about what the grievance said or whether [the defendant] even saw or knew about it").

In this case, Mr. Holleman has not produced any admissible evidence to support his allegation that the book was confiscated because of his prior complaints, lawsuits, and grievances. Nor is there any evidence that Ms. Hess, the individual who actually confiscated the book because it lacked a receipt, was aware of Mr. Holleman's protected activity. Finally, there is no evidence that Warden Brown or Ms. Gilbert were involved in the initial decision to confiscate the book. In the absence of evidence retaliatory animus, Defendants are entitled to judgment as a matter of law.[7]

---

[7]      Mr. Holleman testifies regarding statements Ms. Blasingame made to him to support his retaliation claim. See dkt. 77 at p. 5, 16, 22. Defendants object to the admissibility of those statements. In his surreply, Mr. Holleman argues that the statements Ms. Blasingame made to him are admissible as an excited utterance or a statement against interest pursuant to Federal Rules of Evidence 801(d)(2)(A)-(D) and 804(b)(3). Dkt. 83-1 at p. 5.

        The statements attributed to Ms. Blasingame are inadmissible hearsay. "Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. Hearsay is not admissible. Fed. R. Evid. 802. Mr. Holleman seeks to admit Ms. Blasingame's statements under Rule 801(d)(2), but that section of the Rules only applies to opposing party's statements and Ms. Blasingame is not a party in this case. Further, Rule 804(b) does not apply because there is no evidence that Ms. Blasingame is unavailable as a witness, nor are the statements attributed to her necessarily contrary to her

In any event, even assuming Mr. Holleman has made out a prima facie case for retaliation, his claims must still fail, as the undisputed evidence shows that the book was confiscated for a non- retaliatory reason – it was not sent or received in compliance with the Correspondence Policy. One way that defendants commonly rebut a presumption of retaliatory animus is by demonstrating that the allegedly retaliatory action was "standard procedure." *See, e.g., Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). That is the case here. Ms. Hess properly confiscated the book because it did not include a receipt and it was not from an approved sender as required by the Correspondence Policy. Further, Warden Brown and Ms. Gilbert are allegedly liable for their role in training Ms. Hess and/or responding to Mr. Holleman's grievances regarding the confiscation of the book. Because the Correspondence Policy was applied correctly, they can not be liable for failing to correct Ms. Hess's decision either through training or their responses to grievances. Under these circumstances, Defendants have met their burden to show that they would have taken the action despite the bad motive. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (although it is easy to state a retaliation claim, the burden of proving the claim is heavy).

In the absence of a constitutional violation, Defendants are entitled to qualified immunity on the retaliation claim.

## IV. Conclusion

Defendants' motion for summary judgment, dkt. [70], is **granted**. Mr. Holleman's motion for leave to file a surreply, dkt. [83], is **granted**. The claims for declaratory and injunctive relief are **dismissed as moot.** Defendants are entitled to qualified immunity on all other claims. Final judgment shall now issue.

**IT IS SO ORDERED.**

---

pecuniary interest and supported by corroborating circumstances that clearly indicate the trustworthiness of the statement. Fed. R. Evid. 805(b).

Date: 2/13/2022

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ROBERT L. HOLLEMAN
22102-509
ELKTON - FCI
ELKTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 10
LISBON, OH 44432

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov